UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

PIM SHIH,

                          Plaintiff,

v.                                                              5:24-CV-0850
                                                                (DNH/ML)

BANKERS HEALTHCARE GROUP, LLC,

                          Defendant.

_____

APPEARANCES:                                        OF COUNSEL:

PIM SHIH
  Plaintiff, *Pro Se*
574A 62nd Street #3
West New York, New Jersey 07093[1]

MIROSLAV LOVRIC, United States Magistrate Judge

**<u>ORDER and REPORT-RECOMMENDATION</u>**

The Clerk has sent a complaint in the above captioned action together with an application to proceed *in forma pauperis* and motion to file electronically in ECF, filed by Pim Shih ("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 2, 8.)  For the reasons discussed below, I (1) grant Plaintiff's *in forma pauperis* application (Dkt. No. 2), (2) deny Plaintiff's motion for permission to file electronically in ECF (Dkt. No. 8), and (3) recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed with leave to amend.

---

[1]      The Clerk of the Court is directed to update Plaintiff's address to include his correct state of New Jersey.  (Dkt. No. 1 at ¶ 4; Dkt. No. 2 at 2; Dkt. No. 8 at 2-3.)

## I.    INTRODUCTION

Construed as liberally[2] as possible, the Complaint alleges that Defendant Bankers
Healthcare Group, LLC ("Defendant") discriminated against Plaintiff in denying a loan
application.  (*See generally* Dkt. No. 1.)  The Complaint alleges that Plaintiff is "an Asian
American male and a believer in Jesus Christ the Lord."  (Dkt. No. 1 at 2.)

More specifically, Plaintiff alleges that on September 18, 2023, he applied for credit with
Defendant and was denied the same day.  (*Id.*)  Plaintiff alleges that the denial communication
stated that he would receive a letter within 30 business days outlining the specific reasons for the
denial.  (*Id.*)  The Complaint alleges that on November 23, 2023, Plaintiff received a letter from
Defendant stating that his application was denied due to a "Derogatory Public Record on
Record."  (Dkt. No. 1 at 3.)  The Complaint alleges that on November 23, 2023, Plaintiff
corresponded with Defendant's account manager, Stephen Kiely, during which, Plaintiff
identified as a minority business owner and a Christian.  (*Id.*)  The Complaint alleges that Mr.
Kiely explained that a "Derogatory Public Record" generally refers to issues like collections or
late payments and Mr. Kiely identified himself as an Asian American.  (*Id.*)

Based on these factual allegations, the Complaint asserts the following five claims: (1) a
claim that Defendant violated Title II of the Equal Credit Opportunity Act ("ECOA") by
discriminating against Plaintiff on the basis of his race and religion; (2) a claim that Defendant
violated the New York City Human Rights Law ("NYCHRL") by discriminating against Plaintiff
based on his race and religion; (3) a claim that Defendant breached an implied contract when
Plaintiff submitted a loan application and Defendant agreed to consider the application in

---

[2]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest.
*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790
(2d Cir. 1994)).

accordance with applicable laws and regulations; (4) a claim of negligent misrepresentation because Plaintiff does not have any derogatory public record but reasonably relied on Defendant's representation that he did; and (5) a claim of tortious interference with economic relations by denying Plaintiff's loan application based on impermissible factors including Plaintiff's race and religion.  (Dkt. No. 1 at 4-19.)  As relief, Plaintiff seeks compensatory damages, punitive damages, and injunctive relief "to prohibit Defendant from engaging in further discriminatory practices."  (*Id*. at 19-21.)

## II.   PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[3]  After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[4]

## III.   LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is

---

[3]      The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[4]      Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the

complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well

as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*,

505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp*., 221

F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even

when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant,*

*Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016)

(Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories

of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable

merit as to be frivolous).

Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing

that "the pleader is entitled to relief."  *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019)

(quoting Fed. R. Civ. P. 8(a)).  Each statement must be "simple, concise, and direct,' and must

give 'fair notice of the claims asserted."  *Whitfield*, 763 F. App'x at 107 (quoting *Simmons v.*

*Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  A pleading must also contain "a demand for the relief

sought[.]"  *Id.*  "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or

otherwise unintelligible that its true substance, if any, is well disguised.'"  *Id.*

"In reviewing a complaint . . . the court must accept the material facts alleged in the

complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v.*

*Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court

must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d

66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam)

(reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint

sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua

sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties .

. . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his

pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be

dismissed.

### A.    ECOA Claim

Under ECOA, it is unlawful for any creditor to discriminate against any applicant, with

respect to any aspect of a credit transaction "on the basis of race, color, religion, national origin,

sex or marital status, or age[.]"  15 U.S.C. § 1691.  "Proof of intentional discrimination under the

ECOA generally follows the same burden-shifting methodology employed in Title VII cases."

*Thompson v. Marine Midland Bank*, 198 F.3d 235, 1999 WL 752961, at *2 (2d Cir. 1999).

Therefore, the complaint must allege that the plaintiff was a member of a protected class, that he

qualified for a loan, that the defendant took adverse action against him with respect to the loan,

and the defendant showed preference for someone outside of the protected class. *Thompson*, 1999 WL 752961 at *2.

Here, Plaintiff's only allegations in support of a claim arising under ECOA are that (1) he is a member of a protected class, and (2) his loan application was denied. (*See* Dkt. No. 1 at 2-4.) The Complaint fails to allege facts plausibly suggesting that Plaintiff qualified for a loan or that Defendant showed preference for someone outside of Plaintiff's protected class. *See Thompson*, 1999 WL 752961 at *2-3. Despite Plaintiff's express reference to ECOA, his sparse allegations fail to plausibly suggest that he has a colorable claim. As a result, I recommend that Plaintiff's ECOA claim be dismissed for failure to state a claim upon which relief may be granted.[5]

## B.    Claim Pursuant to NYCHRL

"To state a claim under the NYCHRL, the [p]laintiff must allege that the [d]efendant discriminated against her 'within the boundaries of New York City.'" *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) (quoting *Shah v. Wilco Sys., Inc.*, 806 N.Y.S.2d 553, 558 (N.Y. 1st Dep't 2005)). "[T]o determine the location of the discrimination under the NYCHRL, courts look to the location of the impact of the offensive conduct." *Curto v. Med World Commc'ns, Inc.*, 388 F. Supp. 2d 101, 109 (E.D.N.Y. 2005); *see also Kraiem v. JonesTrading Institutional Servs. LLC*, 429 F. Supp. 3d 184, 200 (S.D.N.Y. 2020) (citation and quotation marks omitted) (dismissing NYCHRL claims where the alleged conduct did not occur "among

---

[5]     The undersigned notes that Plaintiff attached to the Complaint what appears to be the denial letter from Defendant. (Dkt. No. 1 at 22.) Although the copy of the letter in the Complaint is extremely difficult to read, it appears to present four reasons—in separate bullet points—for the denial of Plaintiff's loan application. (*Id*.) Thus, even taking as true Plaintiff's allegation that he had no derogatory public record, there appear to be three other reasons that he was not qualified for the loan.

those who work in the city.").  The Complaint fails to allege facts plausibly suggesting that any of the discrimination occurred within the boundaries of New York City.  As a result, the Complaint fails to allege facts plausibly suggesting a claim pursuant to NYCHRL.

C.      **Breach of Implied Contract**

"Under New York law, '[a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed' intention of the parties as indicated by their conduct.'"  *Leibowitz v. Cornell University*, 584 F.3d 487, 506-07 (2d Cir. 2009) (quoting *Jemzura v. Jemzura*, 36 N.Y.2d 496, 504 (N.Y. 1975)), *superseded by statute*, Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85, as recognized in *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  "A contract implied in fact is as binding as one that is express, and similarly requires such elements as consideration, mutual assent, legal capacity and legal subject matter."  *Leibowitz*, 584 F.3d at 507 (internal quotations omitted).

Plaintiff's allegation that he submitted an application for credit fails to allege facts plausibly suggesting that he entered into an implied contract with Defendant.  Moreover, Plaintiff does not allege any consideration or mutual assent between the parties to plausibly support a claim that an implied contract existed.

As a result, I recommend that Plaintiff's breach of implied contract claim be dismissed for failure to state a claim upon which relief may be granted.

D.      **Negligent Misrepresentation**

To state a claim for negligent misrepresentation, plaintiff must allege that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that [it] should have known was incorrect; (3) the

information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).  Plaintiff fails to allege that (1) Defendant had a duty as a result of a special relationship, or (2) Plaintiff reasonably relied on the allegedly false representation of a "Derogatory Public Record" to his detriment.  Instead, Plaintiff's email dated November 23, 2023, attached to the Complaint contains Plaintiff's assertion that he does not have a Derogatory Public Record.  (Dkt. No. 1 at 23.)  Thus, based on Plaintiff's filing, it is apparent that he knew the alleged derogatory public record was false.

As a result, I recommend that Plaintiff's negligent misrepresentation claim be dismissed for failure to state a claim upon which relief may be granted.

### E.    Tortious Interference

The elements of a claim for tortious interference with prospective economic advantage are "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).

The Complaint fails to allege facts plausibly suggesting that Plaintiff had business relations with a third party, that Defendant interfered with those business relations, or that Defendant's acts injured the relationship.  As a result, I recommend that Plaintiff's tortious interference claim be dismissed for failure to state a claim upon which relief may be granted.

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

Given that this is the Court's first review of Plaintiff's Complaint and that Plaintiff is a *pro se* litigant, out of an abundance of caution, I recommend that he be permitted to replead the Complaint.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient

---

[6]      *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI.    PLAINTIFF'S MOTION TO OBTAIN ECF LOGIN AND PASSWORD

In light of the recommended disposition of this case, Plaintiff's motion for ECF login and password is denied without prejudice.  (Dkt. No. 8.)  "Because this court is recommending dismissal at this time, the court will deny [P]laintiff's motion to obtain ECF privileges without prejudice."  *Amato v. McGinty*, 17-CV-0593, 2017 WL 9487185, at *11 (N.D.N.Y. June 6, 2017) (Baxter, M.J.), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017) (D'Agostino, J.); *see Mahmood v. United States Gov't*, 20-CV-0207, 2020 WL 3965125, at

*3 (N.D.N.Y. Mar. 17, 2020) (Stewart, M.J.) (same), *report and recommendation adopted*, 2020 WL 1808206 (N.D.N.Y. Apr. 9, 2020) (D'Agostino, J.).

     **ACCORDINGLY**, it is

     **ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

     **ORDERED** that Plaintiff's motion to obtain an ECF login and password (Dkt. No. 8) is **DENIED without prejudice**; and it is further

     **ORDERED** that the Clerk of the Court update the docket to reflect Plaintiff's correct home state as New Jersey; and it is further respectfully

     **RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO REPLEAD** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

     **ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

---

[7]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: October  29, 2024
       Binghamton, New York


Miroslav Lovric
U.S. Magistrate Judge

---

[8]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2016 WL 865296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen,
Resident and Taxpayer of Town of Stuyvesant, Plaintiff,
v.
TOWN OF STUYVESANT, COLUMBIA CTY.,
N.Y.; and Valerie Bertram, Individually and as
Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box
40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI,
ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP,
Attorneys for Defendants, 9 Washington Square, Suite 201,
P.O. Box 15085, Albany, NY 12212-5085.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action
filed by William Pflaum ("Plaintiff") against the Town of
Stuyvesant ("Town") and Valerie Bertram, Town Supervisor
("Bertram") (collectively, "Defendants"), is Defendants'
motion for summary judgment pursuant to Fed. R. Civ. P. 56.
(Dkt. No. 59.) For the reasons set forth below, Defendants'
motion is granted.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Complaint**
As a result of the Court's prior decisions (Dkt. Nos. 17,
26), Plaintiff's sole remaining claim in this action is his
First Amendment retaliation claim. More specifically, as
articulated in his Complaint (which was drafted by Plaintiff,
*pro se*, and therefore must be construed with special
solicitude), that claim alleges three separate ways he was
retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges
of ethical violations against Defendant Bertram, she (a)
"collaborated with and supported" the Town's Fire Chief
to deny and/or threaten to deny fire protection to Plaintiff,
(b) "supported and encouraged" various Town employees
to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his
business," and (c) "supported and encouraged" the Town
Assessor's "campaign to intimidate Plaintiff by linking [his]
political speech [with his] real estate assessment." (Dkt. No.
1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing
columns on his Internet blog regarding corruption among the
Town's public officials, the Town filed false criminal charges
against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for
criticizing Bertram, the Town Assessor, and the Town, the
Town Assessor used his authority to raise taxes in order to
intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

**B. Defendants' Motion for Summary Judgment**
**\*2** In their motion for summary judgment, Defendants
request the dismissal of Plaintiff's Complaint in its entirety.
(Dkt. No. 59.) In support of their motion, Defendants make
the following four arguments. First, Defendants argue that
there was no adverse action against Plaintiff in that there
was no actual chilling of Plaintiff's First Amendment speech
or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of
Law].)

Second, Defendants argue that, in any event, any such adverse
action was not motivated or substantially caused by Plaintiff's
First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was
not personally involved in any deprivation of fire protection
services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled
to qualified immunity. (*Id.*)

**C. Plaintiff's Opposition Memorandum of Law**
Generally construed, Plaintiff makes five arguments in
opposition to Defendants' motion. First, Plaintiff argues that
he engaged in protected speech by creating an Internet blog
on which he publicly criticized Town officials and exposed

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 14 of 61

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a) (3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply
#### with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord*, *Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also N.Y. Teamsters Conference Pension*

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 15 of 61

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

*& Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendants' factual assertions); *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

### 2. Undisputed Material Facts

 **\*4** For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that

Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local

town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Case 5:24-cv-00850-DNH-ML   Document 9   Filed 10/29/24   Page 17 of 61

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v.*

*Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug. 2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at \*5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 18 of 61

of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011,

and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed

by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff

interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus. [5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

**\*10** For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

---

**Footnotes**

1    Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2    The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3    As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4    The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5    For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ... of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

---

End of Document                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

198 F.3d 235
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. See Federal Rule of Appellate
Procedure 32.1 and this court's local Rule 32.1.1. for
rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Second Circuit.

Jesse THOMPSON; Jesse Thompson, Inc., doing
business as Heritage Toyota, Plaintiff-Appellant,
v.
MARINE MIDLAND BANK, Defendant-Appellee,
Philip LADER, as administrator of the
Small Business Administration, Defendant.

No. 99-7051.
|
Sept. 16, 1999.

Appeal from the United States District Court for the Western
District of New York, Charles J. Siragusa, Judge.

**Attorneys and Law Firms**

H. Todd Bullard, Rochester, N.Y., for Appellant.

Kenneth A. Payment, Harter, Secrest & Emery LLP,
Rochester, N.Y., for Appellee.

ON BRIEF: Carol L. O'Keefe.

Before McLAUGHLIN, CALABRESI and SOTOMAYOR,
Circuit Judges.

**Opinion**

 **\*1**  Appellant Jesse Thompson appeals from an order of
the United States District Court for the Western District of
New York (Charles J. Siragusa, *Judge* ), granting summary
judgment for the defendant-appellee. We affirm the judgment
of the district court.


I. BACKGROUND

In June 1992, Jesse Thompson first approached Marine
Midland Bank ("Marine") with a proposal for a $750,000 loan
he needed in order to purchase a franchise to sell GM cars
at his struggling Toyota dealership, Heritage Toyota. He met

with Esjaye Whiters of Marine, Peter Flihan of the Small
Business Administration ("SBA"), and Ron Thomas and
Phillip Banks of the Minority Business Development Center
("MBDC") to discuss the proposal. Information contained in
the proposal indicated that Heritage had suffered losses of
$214,772 in 1991 and $256,299 in the last nine months of
1990.

In mid-July 1992, Thompson met with Whiters, Banks, and
an official from Toyota. At the meeting, Whiters stated that if
Toyota could provide an infusion of capital, he felt confident
that Marine would approve the deal. When Thompson learned
that Toyota would not make such an infusion, he informed
Whiters, and both the SBA and Marine's interest in the deal
waned.

In the fall of 1992, Thompson, Banks, Whiters, and Flihan
all met again to discuss a revised loan proposal submitted by
Thompson in August 1992. At the meeting, Whiters requested
additional financial information from Thompson, this time
concerning Robert McCombs, the minority shareholder in
the Toyota dealership. Whiters also suggested that Thompson
contact Ibero-American Investor's Corp. ("Ibero-American"),
an organization that provides investment capital and loans
specifically for minority businesses. Following this meeting,
Whiters says that he did not hear from Thompson for "an
extended period of time." Joint Appendix at 88 [hereinafter
JA]. He assumed that Thompson was pursuing the additional
sources of funding that Whiters allegedly said would be
necessary for the success of Thompson's loan application.

During this extended period, Thompson says that he
attempted repeatedly to contact Marine, without success.
In early 1993, Thompson claims that he met Paul Willsey,
Marine's senior commercial loan officer, at an event and that
Willsey told him, "Oh, you're the person who's been calling
all the time.... I'll get back to you one of these days, if I get
the chance." JA at 680.

In October 1993, Thompson finally received financing from
Toyota. When he subsequently saw Whiters and Flihan at
an event, he told them about the Toyota financing, and their
interest in the deal was renewed. Whiters told Thompson to
submit a revised business plan, and Thomson submitted the
proposal in October 1993. In mid-December, Willsey phoned
Thompson. Thompson taped the call, in which Willsey
admitted that "[w]e clearly should have talked before now.
There's been a clear communication-ah-mess up on our part
and I apologize for that." JA at 529.

**\*2** In a conference call later that day, Thompson taped Flihan speaking to Willsey when both were under the impression that Thompson had hung up. Willsey apparently told Flihan, "this deal isn't going to happen.... We'll make sure we're very polite .... (we'll bring coffee and donuts and find a nice way to say no.)." JA at 533. In a December 17 phone conversation, Willsey directly expressed to Thompson similar skepticism about the viability of the deal.

At a meeting on December 28, 1993, Willsey told Thompson that he could not approve the requested loan unless Thompson was able to provide eight additional items: (1) a loan guaranty from the SBA, (2) unlimited joint and several personal guaranties from Thompson and McCombs (his minority shareholder); (3) subordination of the Toyota loan to the Marine loan; (4) a commitment from Ibero-American for a loan in the amount of $350,000; (5) a collateral security mortgage in the amount of the requested loan on property housing a Ford dealership owned by Thompson; (6) the GM franchise; (7) satisfactory evidence of financing available for new and used cars for the GM franchise; and (8) a revised business plan covering the amount of money to be borrowed and why. Thompson subsequently received financing from Fleet bank with many of the same conditions, but that loan came too late for him to win the GM franchise he was seeking.

After an exchange of letters between Thompson's attorney and Marine in early January, Thompson brought this action against Marine and Philip Lader, Administrator of the SBA. His second amended complaint set forth ten causes of action. In October 1996, however, the district court (David G. Larimer, *Chief Judge* ) dismissed all claims against Lader and several of the claims against Marine. Thompson's surviving claims related to race discrimination in violation of the Equal Credit Opportunity Act ("ECOA"), violation of ECOA notice provisions, and state common-law fraud. In February 1998, the case was reassigned to Judge Siragusa. On December 14, 1998, following extensive discovery, the district court granted Marine's motion for summary judgment on the remaining claims. Thompson now appeals.

## II. DISCUSSION

We review a district court's grant of summary judgment *de novo,* drawing all reasonable factual inferences in favor of the nonmoving party. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 764 (2d Cir.1998). In evaluating a grant of summary judgment, we consider whether there is a "genuine issue as to any material fact" and whether "the movant is entitled to judgment as a matter of law." *Kelly v. City of Mount Vernon,* 162 F.3d 765, 768 (2d Cir.1998).

### A. ECOA Discrimination

Thompson argues that Marine discriminated against him by delaying his loan application and failing either to accept or reject his application in a timely manner. The ECOA provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race." 15 U.S.C. § 1691(a) (1994). Proof of intentional discrimination under the ECOA generally follows the same burden-shifting methodology employed in Title VII cases. *See Gross v. Small Bus. Admin.,* 669 F.Supp. 50, 53 (N.D.N.Y.1987), *aff'd,* 867 F.2d 1423 (2d Cir.1988). Thompson therefore must first establish the prima facie case of discrimination by showing (1) that he was a member of a protected class; (2) that he was qualified for the loan; (3) that the bank took some adverse action with respect to the loan; and (4) that the bank showed a preference for someone outside the protected class. *See Fisher v. Vassar College,* 114 F.3d 1332, 1337 (2d Cir.1997) (en banc). Once Thompson has established a prima facie case, Marine must produce a nondiscriminatory reason for its adverse action. *See id.* Thompson must then produce evidence showing that this nondiscriminatory reason was actually "pretext *for discrimination.*" *Id* at 1339 (emphasis in original).

**\*3** Here, Thompson may have adduced sufficient evidence to satisfy the "*de minimis* " requirements for a prima facie case under *Fisher. Id.* at 1356 (Calabresi, J., concurring in part and dissenting in part). Thompson is a member of a protected class, and the fact that he ultimately received a loan of a similar size from Fleet might create an issue of material fact as to whether he was qualified for the loan he sought from Marine. Similarly, there is also some evidence that Marine delayed in responding Thompson's loan application, and that delay may constitute disparate treatment.

We need not decide the issue of whether Thompson has established a prima facie case, however, because he has failed in his ultimate burden of proving discrimination. Marine has provided a legitimate, nondiscriminatory reason to explain its long delay in processing Thompson's loan. It argues that the history of large financial losses at Heritage Toyota, together with the incomplete nature of Thompson's submissions,

rendered a full review of his application impossible. This explanation is backed up by substantial testimonial evidence, as well as evidence from the meetings recorded by Thompson himself.

Thompson has failed to present evidence showing that this proffered nondiscriminatory reason was actually pretext for discrimination. Moreover, we do not find that, considering Heritage Toyota's history of substantial losses, the bank's delay in processing Thompson's loan was inappropriate for a loan of this size.

### B. ECOA Notice Claims

Thompson also alleges that Marine violated the notice requirements of the ECOA. The applicable regulations promulgated under the ECOA, covering businesses with an annual gross revenue of over $1 million, require that the creditor "[n]otify the applicant, orally or in writing, within a reasonable time of the action taken." 12 C.F.R. § 202.9(a)(3) (ii) (1999).

The official Federal Reserve Board interpretation of 12 C.F.R. § 202.9(a)(3)(ii) states that "[a] creditor subject to § 202.9(a) (3)(ii)(A) is required to notify a business credit applicant, orally or in writing, of action taken on an application within a reasonable time of receiving a *completed application*." 12 C.F.R. pt. 202, Supp. I (1999) (emphasis added). The regulations define a completed application as "an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested." 12 C.F.R. § 202.2(f) (1999). Thompson has failed to provide any evidence showing that the application he submitted contained all the information that Marine regularly obtains and considers in evaluating applications of the type to which his loan request belonged, i.e., large commercial loans made by businesses that have a history of substantial

financial losses. The district court therefore did not err in finding that, as a matter of law, Marine's delay in responding to Thompson's proposal was not unreasonable.

### C. Common Law Fraud

**\*4** Under New York law, in order to establish fraudulent misrepresentation, a plaintiff must prove four elements: (1) that the defendant made a material misrepresentation, (2) that the defendant intended to defraud the plaintiff thereby, (3) that the plaintiff reasonably relied on the misrepresentation, and (4) that the plaintiff suffered damage as a result of the misrepresentation. See *Keywell Corp. v. Weinstein,* 33 F.3d 159, 163 (2d Cir.1994). Here, the only evidence Thompson has produced of a misrepresentation is the secretly taped phone conversation where Willsey told Flihan that the deal was not going to happen. Even if this constituted evidence of a misrepresentation made with the intent to defraud, the fact that Thompson knew about the conversation as soon as it was uttered renders unreasonable any reliance he placed on the bank's subsequent statements regarding the viability of his application. *See id.* at 164 (stating that, when a party is "placed on guard or practically faced with the facts," reliance on a misrepresentation is unreasonable). Therefore, the district court did not err in granting summary judgment for Marine with respect to Thompson's New York common-law fraud claim.

### CONCLUSION

We have considered all of Thompson's contentions and find them to be without merit. The judgment of the district court is therefore AFFIRMED.

**All Citations**

198 F.3d 235, 1999 WL 752961 (Table)

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.

|

Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 26 of 61

no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 27 of 61

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 28 of 61

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 29 of 61

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 30 of 61

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of
Minnesota and Olmested County Court Systeam, and
State of Minnesota, Saint Peter State Hospital, Doctor
Gammel Stephelton, et el Erickson, North West Bank
and Trust, Olmested County Social Service, J.C. Penny
Insurnce, Metmore Finicial, Traveler Insurnce, Comecial
Union Insurnce, Hirman Insurnce, Amrican State
Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi
Insurnce, Steven Youngquist, Kent Chirstain, Micheal
Benson, United Airline, Kowate Airline, Fordmotor
Cridite, First Bank Rochester, George Restwich,
British Airways, Western Union, Prudenial Insurnce,
T.C.F. Bank, Judge Sandy Kieth, Judge Niergari,
Olmestead County Judgering, Judge Mores, Judge
Jacobson, Judge Challien, Judge Collin, Judge Thomase,
Judge Buttler, Judge Morke, Judge Moweer, Sera
Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.

|

May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn.,
St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel,
for Hubert H. Humphry, III, Judicial System of the State
of Minnesota, St. Peter Regional Treatment Center, Gerald
Gammell, MD, William Erickson, MD, Thomas Stapleton,
MD, the Honorable James L. Mork, Chief Judge Anne
Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge
Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon,
Michael J. Holland, of counsel, for British Airways, P.L.C.
and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths,
of counsel, for Olmsted County, Raymond Schmitz, Susan
Mundahl, Norwest Bank Minnesota, N.A. (the Northwest
Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A.,
Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for
J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of
counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert
J. Smith, of counsel, for Travelers Ins. Companies; Hirman
Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas
N. Kaufmann, of counsel, for American States Ins. Co. and
Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F.
Larkin, Asst. U. S. Atty., of counsel, for Michael Benson,
Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F.
Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P., Watertown, NY,
George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

**\*1** In the four and one-half months since she filed this
action, plaintiff Mina Pourzandvakil has filed three amended
complaints and ten motions. She also has sought and received
entry of default against ten defendants, none of whom she
properly served. She twice has sought and been denied
temporary restraining orders. She has included in her action
defendants with no apparent connection to this forum, that
were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of
defendants have filed a total of twelve motions, some seeking
vacation of the defaults entered against them, some seeking
dismissal and others seeking both. We grant defendants'
motions insofar as they seek vacation of the clerk's entries of
default and dismissal of the complaint. We vacate *sua sponte*

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 31 of 61

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Case 5:24-cv-00850-DNH-ML   Document 9   Filed 10/29/24   Page 32 of 61

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3** Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against

them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 33 of 61

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

II. The Jurisdictional Arguments

**\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

**\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 34 of 61

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." Id. Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. Id. Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

### C. Venue
Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Id. § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Id. § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. The purpose of the court's

discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b) (6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

**\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved

in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F.2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 36 of 61

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics.[9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

 **\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (*per curiam*) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

CONCLUSION

 **\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740(1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 37 of 61

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

---

## Footnotes

1    Names in the caption are spelled to reflect plaintiff's complaint.

2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely
     necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the
     word she actually wrote, e.g., "tortured" for "tureared."

3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with
     this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a
     different version of the complaint. Because the original of this version was not filed with the court, no action
     against Cooper is pending in this court.

4    The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies,
     Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint
     based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based,
     *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways,
     also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted.
     All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its
     entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5    The court also received an affidavit and memorandum of law in support of summary judgment from J.C.
     Penney. However, the documents were not accompanied by a notice of motion.

6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and
     Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First,
     although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet
     that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she
     would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks
     permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.*
     § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the
     meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over
     Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without
     resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of
     whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,*
     877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a
     non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining
     defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including
     complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally,
     plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an
     affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other
     than diversity under 28 U.S.C. § 1332.

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 38 of 61

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00850-DNH-ML   Document 9   Filed 10/29/24   Page 39 of 61

2017 WL 9487185
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francis AMATO, et al., Plaintiffs,

v.

Judge Anthony MCGINTY, et al., Defendants.

1:17-CV-593 (MAD/ATB)
|
Signed 06/06/2017

**Attorneys and Law Firms**

Frances Amato, Marlboro, NY, pro se.

John Doe, pro se.

Adrienne Auchmoody, pro se.

Toni Jean Kulpinski, pro se.

Vladimir Kulpinski, pro se.

Michaela Kulpinski, pro se.

Michelle Arzola, pro se.

Jane Doe, pro se.

Adrienne J. Kerwin, Office of Attorney General, David B.
Cabaniss, Cabaniss Casey LLP, Albany, NY, for Defendants.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**\*1** The Clerk has sent to the Court a civil rights complaint
filed by pro se plaintiffs Francis Amato, her son "John
Doe," Adrienne Auchmoody, Toni Jean Kulpinski, Vladimir
Kulpinski, Michaela Kulpinski, Michelle Arzola, and Ms.
Arzola's two children, who have also been referred to as Jane
and John Doe. (Complaint ("Compl.") at 1). Plaintiffs have
paid the filing fee for this action. However, the court will
conduct an initial review of the complaint. [1] Plaintiff Amato
has also filed a motion to obtain an ECF Login and Password.
(Dkt. No. 10).

A complaint must allege " 'enough facts to state a claim
to relief that is plausible on its face.' " *Preacely v. City of*

*New York,* 622 Fed.Appx. 14, 15 (2d Cir. 2015) (quoting *Bell
Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955,
167 L.Ed.2d 929 (2007) ). A claim " 'has facial plausibility
when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal,*
556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)
). A case is "frivolous" when either the factual contentions
are "clearly baseless or when the claim is based upon "an
indisputably meritless legal theory." " *Id.* (quoting *Livingston
v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir. 1998)
). A district court has inherent authority to dismiss a frivolous
action sua sponte "even when the plaintiff has paid the
required filing fee." *Id.* (quoting *Fitzgerald v. First E. Seventh
St. Tenants Corp.,* 221 F.3d 362, 364 (2d Cir. 2000) ). Finally,
a federal court has a continuing and independent obligation
to examine its subject matter jurisdiction sua sponte. *Robbins
v. City of New York,* 254 F.Supp.3d 434, 436 (E.D.N.Y. 2017)
(citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583,
119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ). *See also Forde v.
Hornblower New York, LLC,* 243 F.Supp.3d 461, ——, 2017
WL 1078585, at \*2 (S.D.N.Y. 2017) (citations omitted).

**I. Complaint**
This civil rights action has been brought by plaintiffs
Frances Amato, her son ("CB"), Adrienne Auchmoody
(CB's grandmother), Toni Jean Kulpinski (CB's Aunt
and Godmother), Vladimir Kulpinski (CB's Uncle and
Godfather), Michaela Kulpinski (CB's cousin), and Michelle
Arzola and her two minor children (CB's sister, niece, and
nephew). (Compl. ¶¶ 1-7).

Plaintiffs appear to challenge the conduct of defendant Ulster
County Family Court Judge Anthony McGinty relative to
a custody proceeding involving CB. (Compl. ¶¶ 8, 16).
Plaintiffs have also named Attorney Andrew Gilday, who
plaintiffs state is a "Public Defender," but appears to be the
assigned counsel for Patrick Bessmer—CB's father [2]—in the
custody proceeding. (Compl. ¶ 9). Patrick Bessmer and his
alleged "paramour," Pamela Augustine are also named as
defendants. (Compl. ¶¶ 11, 12). Plaintiffs have also named
Amy Ingram, Esq., CB's assigned attorney for the custody
proceeding.

**\*2** Plaintiffs allege that defendant McGinty was "highly
abusive" to "all" plaintiffs; violated "constitutional" and
"ADA rights;" caused "extreme pain, suffering, and trauma
to "all" plaintiffs when he violated their constitutional

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 40 of 61

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

rights; endangered the welfare of "a child;" and "illegally extended fictitious authority in CLEAR ABSENCE of subject matter jurisdiction." " (Compl. ¶ 18(a)-18(e) ). Plaintiff Amato then describes conduct that was allegedly directed at her.[3] (Compl. ¶ 20). Plaintiff Amato alleges that defendant McGinty denied access to " 'his court,' " denied plaintiff Amato her "rights to proper serving process," denied "any evidence into the court for purpose of record," and denied "the serious risk and harm to [her] child- who is currently and not by [her] consent in public governmental counseling for high risk children." (Compl. ¶ 20). Plaintiff Amato believes that the state proceedings "remain plagued by retributions [sic] for plaintiff's exercise of First Amendment rights to free speech and petition government [sic] for redress of grievances." (Compl. ¶ 19).

Plaintiff Amato alleges that she is an "outspoken advocate," working along side the District Attorney of Ulster County to compile evidence and to file numerous complaints against defendant McGinty. (*Id.*) Plaintiff Amato states that she has been interviewed by many local newspapers and television stations regarding her concerns about Ulster County Family Court and attorney Amy Ingram. Plaintiff claims she has been "very outspoken" regarding the "countless children" endangered by the "decisions of these judges and the negligence of these public servants and child attorneys mentioned [in the complaint.]" (*Id.*)

Plaintiff Amato lists a series of alleged violations which were committed by defendant McGinty, together with defendants Ingram and Gilday, resulting in the "kidnaping" and "endangerment of a minor." (Compl. ¶ 22).[4] Plaintiff Amato states that these three defendants intentionally inflicted emotional distress by removing her child, "altering the 9 year status quo from me and my entire family, violating ***our*** due process...." (Compl. ¶ 22(a) ). These three defendants also allegedly committed "Malicious Trespass," "Abuse of Process," "Retaliation," "False and Unlawful Arrest," "Pre decided trial with no evidence allowed, Obstructing Justice," "Child Endangerment," and "Falsely placing mother and child on a missing persons clearinghouse...." (Compl. ¶ 22(b)-22(h) ).

The complaint contains three "Causes of Action," which contain additional facts and various citations to case law. (Compl. ¶¶ 30-41). The first cause of action is "First Amendment." (Compl. ¶¶ 30-33). The second cause of action is "Parental Impairment," and the third cause of action is "Due Process." (Compl. ¶¶ 34-37, 38-41). Because of the way that the complaint is written, rather than repeating all of the facts, the court will discuss the additional facts as necessary to the analysis of plaintiff's complaint.

## II. Judicial Immunity

### A. Legal Standards

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12, 112 S.Ct. 286.

**\*3** Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F.Supp.2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam) ). Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences...." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10, 112 S.Ct. 286).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself"—whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ). The parties must have dealt with the judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) ). The judge will not be deprived of absolute immunity if he or she takes action that is

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 41 of 61

merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13, 112 S.Ct. 286).

**B. Application**

Plaintiffs have named Ulster County Family Court Judge Anthony McGinty as a defendant. Plaintiff states that the "defendants" have violated "clearly established laws." (Compl. ¶ 31). Plaintiffs allege that defendant McGinty is biased, discriminates against women who are victims of domestic violence, and has retaliated against plaintiff Amato because she has spoken out against him and other Family Court judges, staff, and appointed counsel for her child.

Plaintiffs claim that the "federal funding law" rewards "states and judicial agents," based on the "number and size of child support orders." (Compl. ¶ 32). Based on this "fact," plaintiffs state that a "financial bias has impaired fair and proper consideration of plaintiff's claims and defenses in the challenged proceedings." However, all of Judge McGinty's alleged "biased" or "illegal" conduct was taken in connection with his position as a Family Court judge presiding over plaintiff Amato's custody case. Whether the judge's conduct involved issuing orders based on "funding," allegedly biased decisions in favor of defendant Bessmer, or making decisions that were not in the best interest of CB, these were all actions taken in the course of a custody proceeding in his capacity as a Family Court Judge. Thus, Judge McGinty is entitled to judicial immunity.

Plaintiff attempts to argue that Judge McGinty acted "in absence" of jurisdiction because he took over plaintiff's custody case from another judge in violation of N.Y. Judiciary Law § 21. (Compl. ¶ 18). Plaintiff Amato's argument is misplaced. N.Y. Judiciary Law § 21 reads as follows:

> A judge other than a judge of the court of appeals, or of the appellate division of the supreme court, shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present and sitting therein as a judge.

N.Y. Jud. Law § 21. This means that a trial-level judge shall not decide factual issues that were tried before a different judge. *See People v. Hampton*, 21 N.Y.3d 277, 284-85, 970

N.Y.S.2d 716, 992 N.E.2d 1059 (2013). This applies to situations in which the new judge is called upon to make rulings based on an evaluation of testimony that he or she did not hear. *Id.* at 286, 970 N.Y.S.2d 716, 992 N.E.2d 1059. It does not apply to motions involving pure issues of law. *Id.* at 285, 970 N.Y.S.2d 716, 992 N.E.2d 1059. This also does not mean that a judge cannot take over a custody case, or any other action, after another judge has recused herself. *See id.* Otherwise, no judge could ever be replaced after a case has begun.

**\*4** Plaintiff does not allege that there were motions pending that the previous judge did not address when Judge McGinty took over the case. In fact, the complaint indicates that Judge McGinty presided over the challenged proceedings himself. (Compl. ¶ 22(f) ). Plaintiff Amato states that Judge McGinty "pre-decided" the trial with no evidence allowed. (*Id.*) Plaintiff Amato states that defendant McGinty "struck from the record anything that was pertinent to the safety of the child and mother...." (*Id.*) Finally, plaintiff alleges that defendant McGinty and defendants Gilday and Ingram held a "mock trial." (*Id.*) Thus, the judge heard the factual issues in question, and plaintiff has not alleged a violation of Judiciary Law § 21.

In any event, even if the judge acted in violation of Judiciary Law § 21, the appropriate remedy in state court would be remand to the same judge for his or her own hearing of the issue and a subsequent decision. *Id.* at 286, 970 N.Y.S.2d 716, 992 N.E.2d 1059. Although the state court has referred to this statute as "jurisdictional," it is only with respect to the particular decision that the judge made without hearing the evidence him or herself. *Id.* It does not deprive the court of "jurisdiction" over custody cases. Judge McGinty was still a family court judge with jurisdiction over custody matters. At worst, if Judge McGinty decided a motion or issue improperly, he would have been acting "in excess" of jurisdiction, and he would still be entitled to judicial immunity.

Plaintiffs challenge rulings by Judge McGinty and complain of the way that he managed his courtroom, allegedly "denying access to what the judge called 'his court.' " (Compl. ¶ 20). Judge McGinty allegedly placed CB in "governmental counseling for high risk children" without plaintiff Amato's consent, "denied evidence ... for purpose of record; and "falsely" placed plaintiff Amato and CB on a "missing persons clearinghouse." " (Compl. ¶¶ 20, 22(h) ). Plaintiffs allege that on January 31, 2017, defendant McGinty

"issued a directive to plaintiff [Amato] under penalty of imprisonment .... sixty days in county jail on a civil offense of a woman with no background at all because she wanted to protect her child from further addiction and domestic violence." (Compl. ¶ 24). Plaintiff Amato alleges that the court mocked her and endangered CB with its rulings. (*Id.*) Plaintiff Amato also claims that a "stay" was granted by the Appellate Division, which ordered plaintiff's immediate release from the Ulster County Jail "false arrest and abuse of power." (*Id.*)

Notwithstanding plaintiffs' allegations that the Judge made improper adverse rulings against plaintiff Amato during the custody proceeding with malice or in retaliation for her "exposing" abuses in Family Court, the judge was still performing judicial functions and presiding over plaintiff's custody action. As stated above, a judge does not lose his or her judicial immunity because he or she is accused of acting with malice or corruptly.

In *Koziol v. King*, the plaintiff sued a variety of judges in connection with custody and support proceedings. *Koziol v. King*, No. 6:14-CV-946, 2015 WL 2453481 (N.D.N.Y. May 22, 2015). In *Koziol*, then-Chief District Court Judge Gary Sharpe dismissed claims against County Court Judge King which related primarily to visitation and custody orders in matters pending before him, based on absolute immunity. *Id.* at \*8. Plaintiff Koziol had also challenged that way that Judge King "managed his courtroom." *Id.*

In dismissing the claims against Judge King, Judge Sharpe cited *Davis v. Kushner*, No. 1:14-CV-511, 2014 WL 5308142, at \*5 (N.D.N.Y. Oct. 16, 2014), in which the court held that a family court judge was protected by judicial immunity where the plaintiff alleged that the judge denied him custodial and visitation rights because he was a Muslim, which violated his civil rights. Thus, judicial immunity is not lost because plaintiff alleges that the judge's decision was unconstitutional. Plaintiffs in this case disagree with the judge's decisions. (Compl. ¶ 29). Plaintiff Amato quotes the judge's order awarding custody to defendant Bessmer, and states that the judge did not properly consider CB's father's drug dealing, drug abuse, arrests, domestic violence, and probation violations. (*Id.*)

**\*5** Plaintiff Amato also states that defendant McGinty abused his authority when he issued an order of protection without "a trial or hearing," and subjected plaintiff Amato to supervised visitation, allegedly contrary to New York law.

(Compl. ¶ 35). Plaintiff discusses the proper procedure for "imposing supervised visitation," and faults the judge as well as the other defendants for imposing such restrictions on her. However, these decisions are also within the purview of the Family Court Judge. Even if the judge was incorrect in imposing the alleged restrictions to plaintiff Amato's visitation, it would not deprive Judge McGinty of judicial immunity.

Plaintiff Amato clearly has issues with the Family Court system and claims that the system has been abused by Judge McGinty. The complaint also contains two paragraphs which refer to "financially based custody laws" and states that "Plaintiff" seeks an order declaring Sections 236 and 240 of the Domestic Relations Law unconstitutional. (Compl. ¶¶ 36). Judge McGinty's application of the laws that he has jurisdiction to interpret does not deprive him of judicial immunity, even if those laws were unconstitutional. The constitutionality of state statutes is an issue separate from judicial immunity. [5]

Plaintiff Amato claims in her third cause of action that she was denied the right to a "rational, orderly and timely court proceeding before a neutral and detached magistrate or judge." (Compl. ¶ 39). This is clearly an action that is judicial in nature, and Judge McGinty would be entitled to judicial immunity for any such claim. The same is true for plaintiff's state law claims of intentional and negligent infliction of emotional distress. Thus, plaintiffs' [6] complaint must be dismissed as against defendant McGinty.

**\*6** It has also been held that law guardians are entitled to absolute quasi-judicial immunity for their actions in representing children in Family Court. *Davis v. Kushner*, No. 1:14-CV-511, 2014 WL 5308142, at \*5 (N.D.N.Y. Oct. 16, 2014) (citing inter alia *Yapi v. Kondratyeva*, 340 Fed.Appx. 683, 685 (2d Cir. 2009) (citations omitted); *Holland v. Morgenstern*, No. 12-CV-4870, 2013 WL 2237550, at \*4 (E.D.N.Y. May 20, 2013) (citations omitted); *Lewittes v. Lobis*, No. 04 Civ. 155, 2004 WL 1854082, at \*11 (S.D.N.Y. Aug. 19, 2004) (citations omitted). In *Lewittes*, the court held that the plaintiff would have other available remedies if the child's attorney were derelict in performing his or her duties. 2004 WL 1854082, at \*12. This holding is supported by New York State court decisions holding that such guardians are protected by quasi-judicial immunity. *Id.* at \*11-12, 112 S.Ct. 286 (citing inter alia *Bluntt v. O'Connor*, 291 A.D.2d 106, 737 N.Y.S.2d 471 (4th Dep't), appeal denied, 98 N.Y.2d 605, 746 N.Y.S.2d 279, 773 N.E.2d 1017 (2002) ). Thus, defendant

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 43 of 61

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Ingram, as the attorney for CB would also be entitled to absolute immunity, and the complaint must be dismissed as against her.

## III. **State Action**

### A. Legal Standards

To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk*, 693 F.Supp.2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ). The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ).

Private conduct is simply beyond the reach of section 1983 " 'no matter how discriminatory or wrongful that conduct may be.' " *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ). A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

### B. Application

Plaintiffs have sued Attorneys Andrew Gilday and Amy Ingram [7] as well as Patrick Bessmer and his girlfriend, Pamela Augustine. With respect to Attorneys Gilday and Ingram, it is well-established that private attorneys do not act under color of state law even if they are court-appointed attorneys, performing their traditional function as counsel. *See Harmon v. New York County Dist. Attorney's Office*, No. 13 Civ. 1711, 2014 WL 1044310, at *9 (S.D.N.Y. March 17, 2014) (citing inter alia *Brown v. Legal Aid Soc'y*, 367

Fed.Appx. 215, 216 (2d Cir. 2010); *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ). *See also Licari v. Voog*, 374 Fed.Appx. 230, 231 (2d Cir. 2010) (private attorneys, even if they are court-appointed, and/or associated with a Legal Aid organization, do not act under color of state law when representing their clients). According to plaintiffs, defendant Gilday is the court-appointed attorney for defendant Bessmer, and defendant Ingram was appointed by the court as the attorney for CB.

*7 Defendants Bessmer (CB's father) and Augustine are clearly private parties who do not act under color of state law for purposes of section 1983. Although plaintiffs allege that Bessmer and Augustine "conspired" with other defendants, plaintiff states no facts to support these conclusory statements that are dispersed throughout the complaint. (Compl. ¶¶ 11, 12). Conclusory allegations of conspiracy are insufficient to state a claim under the civil rights laws. *See Brown*, 367 Fed.Appx. at 216 (color of state law may be established if the individual conspired with a state actor, however, conclusory allegations of conspiracy are insufficient). The only state actor is Judge McGinty, and there is no indication, other than the judge's decision in Bessmer's favor, how defendant Bessmer or defendant Augustine would have "conspired" with the judge sufficient to establish that they acted under color of state law. [8]

Plaintiffs allege that defendants Gilday, Ingram, and Judge McGinty "co-conspired," violated her rights and placed CB in the custody of a dangerous criminal in violation of "Statute." (Compl. ¶ 22). "Merely resorting to the courts and being on the winning side of a lawsuit does not rise to the level of 'conspiracy.' " *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1988). Defendant Gilday was appointed to represent defendant Bessmer and had a duty to represent his interests in the custody proceeding. Defendant Ingram was appointed to protect the interests of CB during the proceedings. Plaintiff faults Attorney Ingram for being ill prepared, not returning plaintiff Amato's calls, and was generally an ineffective advocate for CB. Plaintiff claims that defendant Ingram also "fought vehemently" in favor of custody for defendant Bessmer (Compl. ¶ 26). Plaintiff also states that her "adversary," the judge, and the appointed child attorney "ganged up" on her. (Id.)

Defendant Ingram's alleged incompetence and the fact that the judge ultimately ruled in defendant Bessmer's favor does not indicate that the judge conspired with the attorneys regarding his ruling or that defendants Bessmer and

Augustine somehow conspired with the judge to obtain a favorable result. Thus, the complaint may be dismissed in its entirety as against defendants Attorney Gilday, Attorney Ingram, Bessmer and Augustine.

## IV. Minor Child Plaintiffs

### A. Legal Standards

It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself. [9] *Lattanzio v. COMTA,* 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654.

### B. Application

Plaintiff's have listed various "John" or "Jane" Doe minors as plaintiffs, including CB, plaintiff Amato's child. The adult plaintiffs have all signed the complaint and added their John or Jane Doe children under their names. [10] (Compl. CM/ECF pp. 27, 28, 32). However, while the adults may represent their own interests, they may not represent the interests of their children. *See Cheung v. Youth Orchestra Found. of Buffalo,* 906 F.2d 59, 61 (2d Cir. 1990) (a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child because the choice to appear pro se is not a true choice for minors who, under state law, cannot determine their own legal actions) (citing Fed. R. Civ. P. 17(b) ). The court in *Cheung* further stated that it is not in the interests of minors or incompetents that they be represented by non-attorneys. *Id.* "Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.* Thus, the minor children may not be plaintiffs on their own because they are minors, [11] and the adult plaintiffs may not represent their children. *See also Armatas v. Maroulleti,* 484 Fed.Appx. 576 (2d Cir. 2012).

**\*8** The court would also point out that although all the adult plaintiffs have signed the complaint, they did not include their addresses. The only specific contact information is for plaintiff Amato. The complaint contains a description of the various plaintiffs and generally where they live, [12] but no specific addresses have been provided. (Compl. ¶¶ 3-7). Plaintiff Amato may not act on behalf of any of the other plaintiffs because she is not an attorney. This includes accepting mail from the court and sending it to the other plaintiffs. In any event, as discussed below, the adults, other than the plaintiff have no standing to bring this action.

## V. Standing

### A. Legal Standards

A plaintiff bears the burden of establishing that he or she has standing to bring an action in federal court. *Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir. 2011). "To establish constitutional standing, a plaintiff must show (1) an injury in fact, (2) causation between the injury and the offensive conduct, and (3) 'a likelihood that the injury will be redressed by a favorable decision.' " *Heath v. Banks,* No. 16-3493-cv, slip. op. at 2 (2d Cir. June 5, 2017) (quoting *Susan B. Anthony List v. Driehous,* —— U.S. ——, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) ). In addition, there is a "prudential standing rule" which states that, normally litigants are barred from "asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Id.* (quoting *Rajamin v. Deutsche Bank Nat'l Tr. Co.,* 757 F.3d 79, 86 (2014) ).

### B. Application

In this case, plaintiff Amato has added other adult plaintiffs, including her mother, CB's Aunt and Uncle, and CB's adult cousin. None of these individuals are parties to the custody action, and it is unclear how family that lives in Ohio, (Compl. ¶ 7), would have standing to assert claims in this case. According to the prudential standing rule, the additional plaintiffs would be barred from asserting the legal interests of either plaintiff Amato or CB even if the other plaintiffs claimed that they are "injured" by any of the defendants' actions. Thus, the complaint may also be dismissed for lack of standing as against all plaintiffs other than plaintiff Amato and CB.

## VI. *Rooker-Feldman*, The Domestic Relations Exception, and *Younger v. Harris*

### A. The Domestic Relations Exception

#### 1. Legal Standards

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshal v. Marshall,* 547 U.S. 293, 308, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 45 of 61

adjudicating such matters, which the federal courts lack." *Thomas v. N.Y. City*, 814 F.Supp. 1139, 1146 (E.D.N.Y. 1993). In *Bukowski v. Spinner*, No. 17-CV-845, 2017 WL 1592578 (E.D.N.Y. Apr. 28, 2017), the District Court dismissed a fee-paid action, sua sponte which raised very similar claims to the case herein. In *Bukowski*, the plaintiff sought to challenge rulings made in an underlying state court child custody case, [13] naming the Judge, law guardian, and County Attorney, among other defendants. *Id.* Plaintiff in *Bukowski* criticized the Judge, stated that the law guardian was "not troubled" by the judge's actions, criticized the caseworkers, and claimed that she was subjected to "unfounded" charges. *Id.* at *1.

### 2. Application

**\*9** Plaintiffs in this case are making the same claims and challenging similar actions by the state court judge and the state court attorneys who appeared in plaintiff Amato's custody case. The plaintiff in *Bukowski* also raised "constitutional" issues, but the court recognized that the allegations essentially challenged a state domestic relations matter, and were therefore, outside the federal court's jurisdiction. 2017 WL 1592578, at *3 (citations omitted). A review of plaintiffs' request for relief in this case shows that they are essentially challenging the state court's action. In addition to substantial monetary damages, plaintiffs seek "immediate return" of CB, together with a judgment "declaring the orders, edicts, and processes described in this Complaint unconstitutional with an order permanently enjoining the enforcement of these orders." (Compl. at CM/ECF p. 26).

In order to return custody of CB to plaintiff, or to "enjoin" the state court's orders, this court would have to re-determine the judge's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See also Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F.Supp.3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Thus, the case may be dismissed based on the domestic relations exception. To the extent that the custody case has

been concluded, the court will also discuss alternate bases for dismissal.

### B. *Rooker-Feldman*

#### 1. Legal Standards

A dismissal pursuant to the *Rooker Feldman* [14] doctrine is for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 Fed.Appx. 16, 18 (2d Cir. 2013). This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999) ).

There are four requirements to the application of *Rooker Feldman*: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff's injuries must have been caused by the state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the judgment must have been rendered prior to filing the federal court action. *Bukowski*, 2017 WL 1592578, at *3 (citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) ).

#### 2. Application

As Judge D'Agostino stated in her June 2, 2017 decision, under the *Rooker Feldman* doctrine, the district court also does not have subject matter jurisdiction over claims that effectively challenge state court judgments in general. (Dkt. No. 9) (quoting *Arena v. Dep't of Soc. Servs. of Nassau Cty.*, 216 F.Supp.2d 146, 151 (E.D.N.Y. 2002) ). Although it is unclear whether the plaintiff's custody case is finally decided because plaintiff claims that the Judge scheduled a proceeding in "October" notwithstanding that the witnesses were ready to testify. [15] (Dkt. No. 8 at CM/ECF p.4). To the extent that plaintiff's custody case is terminated, or to the extent that plaintiff seeks review of decisions that the judge has already issued, this complaint is barred by *Rooker Feldman* because plaintiff is essentially challenging the state court's decision.

Plaintiff lost in state court, her injuries are allegedly causes by the state court judgment that she seeks to overturn, plaintiff is asking this court to overturn Judge McGinty's rulings, and it appears that custody was awarded to Mr. Bessmer prior to plaintiff bringing this action. Thus, all the requirements for *Rooker Feldman* have been met with respect to orders that have already been issued by Judge McGinty.

### C. *Younger v. Harris* [16]

#### 1. Legal Standards

**\*10** In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. at 43-44. The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id.* *Younger* abstention has been expanded to include state civil proceedings which are akin to criminal prosecutions [17] and state court proceedings which implicate a state's interest in enforcing the orders and judgments of its courts. [18] Until 2013, the abstention analysis involved determining (1) whether there was an ongoing state proceeding; (2) whether an important state interest was implicated; and (3) whether the plaintiff had an avenue open for review of constitutional claims in state court. *See Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Parent v. New York*, 485 Fed.Appx. 500, 503 (2d Cir. 2012) (quoting *Younger, supra; Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 1997) ).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 134 S.Ct. 584, 588, 187 L.Ed.2d 505 (2013), the Court revisited the analysis required to invoke abstention under *Younger*. In *Sprint*, the Court rejected the three-part test in favor of a "categorical approach." *Mir v. Shah*, 569 Fed.Appx. 48, 51 (2d Cir. 2014) (citing *Sprint*, 134 S.Ct. at 591-94). *Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) civil proceedings that are akin to criminal proceedings; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* (quoting *Sprint*, 134 S.Ct. at 588). In *Sprint*, the Court used state-initiated custody proceedings in its analysis [19] as an example of civil proceedings which are akin to criminal proceedings. 134 S.Ct.

at 592 (citing *Moore v. Sims*, 442 U.S. 415, 419–420, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents) ). *See also Davis v. Baldwin*, 594 Fed.Appx. 49, 51 (2d Cir. 2015) (same).

"If the federal court action falls into one of the three categories listed above, the court may then consider additional factors, such as "whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." " *Torres v. Gaines*, 130 F.Supp.3d 630, 636 (D. Conn. 2015). In Judge D'Agostino's decision, she stated that "several courts in the Circuit have held that *Younger* abstention applies in similar circumstances as this case." (Dkt. No. 9 at 5) (citing *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 456 S.W.3d 545, 2015 WL 1120121, at \*2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding).

In *Graham*, the court stated that " 'there can be no doubt that a custody dispute ... raises important state interests.' " 2015 WL 1120121, at \*3, 456 S.W.3d 545 (quoting *Reinhardt v. Com. of Mass. Dep't of Social Servs.*, 715 F.Supp. 1253, 1256 (S.D.N.Y. 1989) ). In addition, the court held that plaintiff was able to raise any potential constitutional claims in state court. *Id.* Therefore, the court applied *Younger* to dismiss plaintiff's claims for injunctive relief. The same is true in this action to the extent that any of the issues upon which plaintiffs base their action are still pending or are to be tried in the future. [20] In fact, plaintiff Amato has cited a quote from a letter, signed by Judge McGinty, telling plaintiff Amato that, if she is unhappy with the court's decision, her recourse is an appeal of that decision. [21] (Compl. ¶ 41).

## VII. Opportunity to Amend

#### A. Legal Standards

**\*11** Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

Because Judge McGinty and Attorney Ingram are entitled to absolute immunity, it would be futile to allow the plaintiffs to amend their complaint. No amendment will cure this deficiency. Defendant Gilday does not act under color of state law, and plaintiffs have made no sufficient allegations of a conspiracy with Judge McGinty that would be sufficient to establish state action by defendant Gilday. Thus, the court also recommends that no amendment be allowed. Defendants Bessmer and Augustine also do not act under color of state law, and defendant Bessmer is simply plaintiff Amato's adversary in the custody dispute. Defendant Augustine does not appear to be involved in the litigation at all. Thus, no amendment would change this court's recommendation with respect to defendants Bessmer and Augustine.

The court notes that, as stated above, in two of the paragraphs of her complaint, plaintiff appears to state that New York Domestic Relations Law §§ 236 and 240 are "unconstitutional," but her reasoning for this allegations is completely unclear. (Compl. ¶ 36). While plaintiff Amato might in certain circumstances be entitled to challenge the constitutionality of laws as they applied to her without running afoul of the domestic relations exception, *Younger*, or *Rooker Feldman*, the other plaintiff's do not have standing to assert this claim because the laws have not been applied to them, and plaintiff Amato has not named any defendants that would be able to afford her the relief that she seeks with respect to the sections of the law that she appears to challenge. In addition, it is likely that even a proper challenge to the statute would have to be brought first in state court. *See Kahn, supra.* The court also points out that this claim does not appear in plaintiff's "relief" section. Thus, the court will recommend dismissing this claim without prejudice to filing an amended complaint with only plaintiff Amato as the plaintiff, against the proper defendant, at the proper time, and in the appropriate forum. [22]

### VIII. Motion to Obtain ECF Login and Password

Because this court is recommending dismissal at this time, the court will deny plaintiff's motion to obtain ECF privileges without prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiffs' complaint be dismissed in its entirety **WITH PREJUDICE** as against defendants McGinty, Ingram, Gilday, Bessmer, and Augustine, and it is

**RECOMMENDED**, that plaintiff Amato's complaint be dismissed **WITHOUT PREJUDICE** only with respect to any claim challenging the constitutionality of New York Domestic Relations Law, and only against the proper defendant for such challenge, at the proper time for such challenge, and in the proper forum, as discussed above, and it is

**\*12 ORDERED**, that plaintiff Amato's motion to obtain ECF privileges (Dkt. No. 10) is **DENIED**, and it is

**ORDERED**, that the Clerk serve a copy of this order on plaintiffs to the extent that addresses are available.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

### All Citations

Not Reported in Fed. Supp., 2017 WL 9487185

---

### Footnotes

1    The court notes that on June 2, 2017, plaintiff Amato filed a motion for a Temporary Restraining Order. (Dkt. No. 8). District Judge D'Agostino denied the motion on the same day. (Dkt. No. 9).

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 48 of 61

2    Plaintiff Amato and defendant Patrick Bessmer were apparently not married.

3    The court notes that, although there are multiple plaintiffs, most of the defendants' alleged conduct was directed at plaintiff Amato alone. Plaintiff Amato appears to allege that the defendants' conduct toward her and CB injured the other defendants because of their family relationship to plaintiff Amato and CB. (*See* Compl. ¶ 45) (stating that "no parties had a due process court hearing or trial, [and] were never served any form of order").

4    There appears to be no ¶ 21 in the complaint.

5    Although plaintiffs' complaint asks that two sections of New York Domestic Relations Law be declared "unconstitutional," the court must first note that, to the extent that the claim could be asserted at all, it could only be asserted by plaintiff Amato because she is the only plaintiff who has been a party to the custody proceedings and to whom the statute would have been applied. In addition, none of the individuals named as defendants are proper defendants in such an action. Finally, in cases involving Domestic Relations issues, the court must afford the state court appropriate deference in light of ongoing proceedings involving the plaintiff. *See Kahn v. Shaiswit*, 414 F.Supp. 1064, 1068 (S.D.N.Y. 1976) (dismissing an action by plaintiff husband in a divorce matter in which he challenged the constitutionality of New York Domestic Relations Law § 239). The court in *Kahn* cited *Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976), in which Judge Oakes stated in a concurring opinion, that " 'probate and domestic relations are matters which have long been recognized as invoking, at least initially, interests which are predominantly of state concern.' " *Id.* at 1067 (quoting *Mendez*, 530 F.2d at 461). Thus, to the extent that plaintiff Amato may be attempting to challenge the constitutionality of sections of the New York Domestic Relations Law, the claim may be dismissed.

6    Judicial immunity applies to shield Judge McGinty's liability as to all the plaintiff's, although plaintiff Amato is generally the plaintiff to whom the complaint refers. Plaintiff Amato appears to attempt to include the other plaintiffs by stating that they did not get "hearings," they do not appear to have been parties to the custody case. To the extent that any of the other "plaintiffs," uncle, aunt, grandmother, sister, niece and nephew had dealings with Judge McGinty, it was only in connection with the custody action, and the judge is entitled to absolute immunity no matter who the plaintiff is.

7    As stated above, defendant Ingram is entitled to immunity. The lack of state action is an alternative basis for dismissal as against this defendant.

8    Plaintiff alleges that she was verbally and physically threatened by defendants Bessmer and Augustine outside the court, and that Judge McGinty only issued an order of protection for plaintiff Amato and not for CB. (Compl. ¶ 29). The alleged attack by Bessmer and Augustine was certainly a "private action," and the judge's failure to issue a protective order for CB is not alleged to have been the result of any "conspiracy."

9    An limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case. An exception has also been established for parents representing their children in applications for Supplemental Security Income ("SSI"). *Machadio v. Apfel*, 276 F.3d 103, 106-07 (2d Cir. 2002). However, the interests of the child and the parent were "intertwined," and the Social Security regulations provided for such representation.

10   One plaintiff has attempted to sign the complaint herself as a "minor," with her "guardian" signing the complaint underneath the minor's name. (Compl. at CM/ECF p.32).

11   Fed. R. Civ. P. 17(e).

**Amato v. McGinty, Not Reported in Fed. Supp. (2017)**

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 49 of 61

12    Most of the plaintiffs live in New York State, but Michelle Arzola and her two "Doe" "children" live in Ohio. (Compl. ¶ 7).

13    One of the rulings granted sole custody to the father of the child. 2017 WL 1592578, at *1.

14    *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 17, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

15    Plaintiff Amato does allege that custody has already been awarded to defendant Bessmer.

16    401 U.S. 37 (1971).

17    *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

18    *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

19    *Sprint* did not involve custody proceedings.

20    *Younger* does not apply to monetary damages, thus, the dismissal of plaintiff's damage claims would be governed by the domestic relations exception and not *Younger*.

21    The letter is referring to a "decision" from 2016. It is unclear what that decision may have been or whether it was the judge's actual custody decision.

22    Although plaintiff also mentions the Family Court Act in paragraph 36 of her complaint, she does not indicate which sections of the Act she believes to be unconstitutional.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 4083575
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Frances AMATO; John Doe, progeny minor child;
Adrienne Auchmoody; Toni Jean Kulpinski;
Vladimir Kulpinski; Michaela Kulpinski; Michelle
Arzola; Jane Doe, minor child; and John Doe,
minor child of Michelle Arzola, Plaintiffs,
v.
Judge Anthony MCGINTY, individually and
as Ulster County Family Court Judge; Attorney
Andrew Gilday, individually and as a public
defender of New York; Amy Ingram, state attorney
for the child; Patrick V. Beesmer, individually;
and Pamela Augustine, individually, Defendants.

1:17-CV-00593 (MAD/ATB)
|
Signed 09/15/2017

**Attorneys and Law Firms**

FRANCES AMATO, P.O. Box 820, Marlboro, New York
12542, Plaintiff, pro se.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge

**I. INTRODUCTION**

*\*1* On May 26, 2017, *pro se* Plaintiff Frances Amato
("Plaintiff Amato") commenced this action pursuant to
42 U.S.C. § 1983 ("Section 1983"). *See* Dkt. No. 1 at
1, 4. Plaintiff Amato is joined in this action with her
son ("Plaintiff CB"); her mother, Adrienne Auchmoody
("Plaintiff Auchmoody"); Plaintiff CB's aunt, Toni Jean
Kulpinski ("Plaintiff TK"); Plaintiff CB's uncle, Vladimir
Kulpinski ("Plaintiff VK"); Plaintiff CB's cousin, Michaela
Kulpinski ("Plaintiff MK"); Plaintiff CB's sister, Michelle
Arzola ("Plaintiff Arzola"); Plaintiff CB's niece ("Plaintiff
Jane Doe"); and Plaintiff CB's nephew ("Plaintiff John
Doe"). *See id.* at 1-2. Plaintiffs have brought this action
against Ulster County Family Court Judge Anthony McGinty
("Defendant McGinty") for his role in a decision dictating
the custody of Plaintiff CB entered on October 24, 2016.

*See* Dkt. No. 17 at 67; Dkt. No. 1 at 3. Plaintiffs
have also sued Plaintiff CB's father, Patrick Beesmer
("Defendant Beesmer"); Plaintiff CB's assigned counsel
for the custody proceedings, Amy Ingram, ("Defendant
Ingram"); Defendant Beesmer's assigned counsel for the
custody proceedings, Attorney Andrew Gilday ("Defendant
Gilday"); and Defendant Beesmer's "paramour" as Plaintiffs
refer to her, Pamela Augustine ("Defendant Augustine"), for
their roles in the custody proceeding. *See* Dkt. No. 1 at 3-4.

Plaintiffs filed a motion for a temporary restraining order
on June 2, 2017, *see* Dkt. No. 8, which the Court denied
that day, *see* Dkt. No. 9. On June 6, 2017, Magistrate
Judge Baxter issued an Order and Report-Recommendation
recommending that Plaintiffs' complaint be dismissed in
its entirety with prejudice as to all named Defendants in
this action. *See* Dkt. No. 11 at 26. Plaintiffs submitted
objections to Magistrate Judge Baxter's Order and Report-
Recommendation on June 19, 2017. *See* Dkt. No. 17.
Currently before the Court is Magistrate Judge Baxter's
Order and Report-Recommendation and Plaintiffs' objections
thereto.

**II. BACKGROUND**

Plaintiff Amato and Defendant Beesmer are the parents of
Plaintiff CB and were involved in custody proceedings over
Plaintiff CB. *See* Dkt. No. 1 at 5. According to the complaint,
Defendant McGinty presided over the custody proceedings
after the originally assigned judge recused herself. *See id.* In
an order dated October 24, 2016, Defendant McGinty granted
Defendant Beesmer primary custody of Plaintiff CB. *See* Dkt.
No. 17 at 64-65, 67.

Upset with the outcome of the custody proceedings, Plaintiff
Amato commenced the instant action against Defendants for
their roles in the proceedings.[1] *See* Dkt. No. 1. Plaintiff
Amato claims that during the custody proceedings, Defendant
McGinty was "[h]ighly abusive" to "all" plaintiffs; violated
Plaintiffs' "constitutional" and "ADA rights;" induced
"[e]xtreme pain and suffering and trauma to all plaintiffs;"
"endanger[ed] the welfare of a child;" and "[i]llegally
extended fictious authority in CLEAR ABSENCE of subject
matter jurisdiction." *Id.* at 6-7. Plaintiff Amato claims that
Defendant McGinty denied her access to "his court," denied
her "rights to proper serving process," and denied the
admission of "any evidence into the court for purpose of
record." *Id.* at 7.

**\*2** Plaintiff Amato claims that Defendant McGinty "co-conspired" with other Defendants in a "mock trial" to punish Plaintiff Amato for her role as an "outspoken community advocate" for human rights and family court reform. *See id.* at 7, 9, 15. Plaintiff Amato alleges that Plaintiff CB's custody proceedings were "plagued by retributions" for Plaintiff Amato's public criticism of Defendant McGinty prior to the custody proceedings. *Id.* at 7.

Plaintiff Amato alleges that Defendant McGinty, with cooperation from Defendants Ingram and Gilday, committed a number of violations resulting in the "kidnaping and endangerment of a minor." *Id.* at 8. Plaintiff Amato claims that Defendants McGinty, Ingram and Gilday committed "Malicious Trespass," "Abuse of Process," "Retaliation," "False [and] unlawful arrest," and "Child Endangerment." *See id.* at 8-9. Plaintiff Amato alleges that Defendant McGinty "[p]re decided [a] trial with no evidence allowed." *Id.* at 8.

Plaintiffs allege "Causes of Action" for "First Amendment," "Parental Impairment," and "Due Process." *Id.* at 14-26. Plaintiffs also allege additional state law claims for "intentional and negligent emotional distress." *Id.* at 24. Plaintiffs request the "immediate return of the child," compensatory damages of $10,000,000 on each cause of action, punitive damages, costs and attorneys' fees, and a "[j]udgment declaring the orders, edicts and processes in th[e] [c]omplaint unconstitutional[,] together with an order permanently enjoining the enforcement of [the family court] orders." *Id.* at 26.

## III. DISCUSSION

### A. Standard of Review

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell,* 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner,* 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)). However, "[t]he right of self-representation does not exempt a party from compliance with the relevant rules of procedural and substantive law." *Massie v. Ikon Office Solutions, Inc.,* 381 F. Supp. 2d 91, 94 (N.D.N.Y.

2005) (quoting *Clarke v. Bank of New York,* 687 F. Supp. 863, 871 (S.D.N.Y. 1988)).

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections to a magistrate judge's report, the district court engages in *de novo* review of the issues raised in the objections. *See id.*; *Farid v. Bouey,* 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008). When a party fails to make specific objections, the court reviews the magistrate judge's report for clear error. *See Farid,* 554 F. Supp. 2d at 307; *see also Gamble v. Barnhart,* No. 02-CV-1126, 2004 WL 2725126, \*1 (S.D.N.Y. Nov. 29, 2004).

Although a *pro se* litigant's objections should be accorded leniency, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *DiPilato v. 7-Eleven, Inc.,* 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (quotation omitted); *see also IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.,* No. 07 Civ. 6865, 2008 WL 4810043, \*1 (S.D.N.Y. Nov. 3, 2008) ("To the extent ... that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error.").

**\*3** As mentioned, Plaintiffs have submitted objections to the Order and Report-Recommendation issued by Magistrate Judge Baxter. *See* Dkt. No. 17. The objections submitted by Plaintiffs are 117 pages long. *See id.* Despite the correct caption at the top of the document, the first 25 pages of the document appear to be an appellate brief to the State of New York Supreme Court, Appellate Division, Third Department.[2] *See id.* at 1-25. The remaining 92 pages include a brief analysis of custody factors, Defendant McGinty's custody decision, court transcripts, testimonial statements, and documents outlining the history of the custody proceedings. *See id.* at 25-117. There is no mention of Magistrate Judge Baxter or the Order and Report-Recommendation in any of these documents. Accordingly, Plaintiffs have failed to file specific objections. However, regardless of whether the Court reviews the Order and Report-Recommendation *de novo* or for clear error, Plaintiffs' complaint is still subject to dismissal.

Case 5:24-cv-00850-DNH-ML   Document 9   Filed 10/29/24   Page 52 of 61

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

## B. Judicial Immunity

Judges are afforded absolute immunity from suit for actions related to the exercise of their judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). Judges maintain judicial immunity "even when [the] judge is accused of acting maliciously and corruptly." *Id.* at 554. Judicial immunity is only defeated by "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity;" or "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citations omitted). A judicial action is "a function normally performed by a judge, and to the expectations of the parties." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). A judge's actions are in "absence of all jurisdiction" when the court has no "statutory or constitutional *power* to adjudicate the case." *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Judicial actions made in error or "in excess of his authority" do not defeat judicial immunity. *Mireles*, 502 U.S. at 12-13 (quoting *Stump*, 435 U.S. at 356). Furthermore, a district court cannot grant injunctive relief "against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (quotation omitted).

Plaintiffs have brought a number of allegations against Defendant McGinty, including that he violated their constitutional rights, co-conspired with the remaining Defendants, endangered the welfare of Plaintiff CB, and retaliated against Plaintiff Amato for being outspoken about Defendant McGinty's purported "abuses and discrimination against mothers and children." Dkt. No. 1 at 5-9. Accepting Plaintiff's claims as true, all claims occurred while Defendant McGinty was working within his judicial capacity to determine the proper custody for Plaintiff CB. Accordingly, Defendant McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13. Magistrate Judge Baxter correctly reasoned that any action Defendant McGinty committed with malice or in retaliation of Plaintiff Amato's criticisms was still performed within the judicial functions of a family court judge presiding over a custody dispute. Magistrate Judge Baxter also correctly concluded that Plaintiff's arguments with respect to N.Y. Jud. Law § 21 are unavailing, as Defendant McGinty did not violate that provsion, and, even if he did, he would still be entitled to judicial immunity. *See generally Gross*, 585 F.3d at 84.

Furthermore, law guardians are entitled to quasi-judicial immunity for actions pertaining to their representation of a child in family court. *See Yapi v. Kondratyeva*, 340 Fed. Appx. 683, 685 (2d Cir. 2009) (citations omitted); *Lewittes v. Lobis*, No. 04 Civ. 0155, 2004 WL 1854082, *11 (S.D.N.Y. Aug. 19, 2004). Therefore, Magistrate Judge Baxter correctly concluded that Defendant Ingram is entitled to quasi-judicial immunity by virtue of her appointment as Plaintiff CB's law guardian. *See* Dkt. No. 11 at 12-13.

## C. State Action

**\*4** To state a claim under Section 1983, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Moreover, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005) (quoting *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)).

The conduct of a private actor may be considered state action when the private actor "is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). However, "private attorneys—even if the attorney was court appointed—are not state actors for the purposes of § 1983 claims." *Licari v. Voog*, 374 Fed. Appx. 230, 231 (2d Cir. 2010) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)). The mere conduct of a private party is excluded from the reach of Section 1983 "no matter how discriminatory or wrongful" that conduct may be. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted).

Plaintiffs filed suit against Defendant Gilday for his role as Defendant Beesmer's assigned counsel and against Defendant Ingram for her role as Plaintiff CB's assigned attorney. Defendants Gilday and Ingram, even if they were court appointed, cannot be considered state actors. *See Licari*, 374 Fed. Appx. at 231. Furthermore, Defendants Beesmer and Augustine are obvious private parties who are not state actors under Section 1983. Defendants Beesmer and Augustine had no connection to the state beyond their participation in the custody proceedings.

While Plaintiffs have claimed that Defendants Beesmer and Augustine "conspired" with the other Defendants to achieve

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 53 of 61

the custody outcome, as Magistrate Judge Baxter found, there have been no facts to support these conclusory statements.[3] Conspiracy allegations that are wholly conclusory are insufficient to state a claim under Section 1983. *See Tapp v. Champagne*, 164 Fed. Appx. 106, 108 (2d Cir. 2006) (citing *Ciambriello*, 292 F.3d at 325); *see also Brito v. Arthur*, 403 Fed. Appx. 620, 621 (2d Cir. 2010) ("Complaints containing only 'conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights' will be dismissed.") (citing *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977)). Accordingly, this Court agrees with Magistrate Judge Baxter that Defendants Gilday, Ingram, Beesmer, and Augustine were not state actors, and the complaint is dismissed as to each of these Defendants.

**D. Minor Child Plaintiffs**

An individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007)). Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). Three minor plaintiffs, Plaintiff CB, Plaintiff John Doe, and Plaintiff Jane Doe, have been listed as *pro se* litigants in this action. *See* Dkt. No. 1 at 1-2; Dkt. No. 11 at 16. While the adult Plaintiffs may bring this lawsuit *pro se*, they may not act as counsel for the minor children without being a licensed attorney. *See Cheung*, 906 F.2d at 61. Therefore, this Court agrees with Magistrate Judge Baxter's determination that the adult Plaintiffs in this matter may not bring suit on behalf of the minor Plaintiffs.

**E. Standing**

**\*5** A plaintiff who wishes to invoke federal jurisdiction bears the burden of establishing that he or she has adequate standing to bring the action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)) (other citation omitted). To establish standing, "a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 96 (2d Cir. 2009) (citations omitted). Moreover, there is a "prudential standing rule" which generally bars litigants "from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Rajamin v.*

*Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (quotation omitted).

Here, despite multiple adult Plaintiffs filing suit against Defendants, Plaintiff Amato is the only Plaintiff that was a party to the custody proceedings regarding Plaintiff CB. Plaintiffs Auchmoody, TK, VK, MK, and Arzola only appear to be connected to the custody proceedings by their relationship with Plaintiffs Amato and CB. *See generally* Dkt. No. 1. Pursuant to the prudential standing rule, Plaintiffs Auchmoody, TK, VK, MK, and Arzola cannot assert the rights of Plaintiff Amato or Plaintiff CB. *See Rajamin*, 757 F.3d at 86. Therefore, all Plaintiffs other than Plaintiffs Amato and CB lack standing, and the complaint with respect to these Plaintiffs is dismissed.

**F. Domestic Relations Exception**

Magistrate Judge Baxter also noted that the Court lacks subject matter jurisdiction over several of Plaintiffs' claims pursuant to various legal doctrines. Due to the nature of Plaintiffs' complaint, it is difficult to precisely determine exactly which doctrines apply, but the Court will discuss several doctrines which preclude the Court from exercising subject matter jurisdiction over several of Plaintiffs' claims.

The domestic relations exception to federal jurisdiction divests federal courts of jurisdiction in matters involving divorce, alimony, and child custody. *Marshall v. Marshall*, 547 U.S. 293, 307-08 (2006) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992)); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) ("[I]t has been uniformly held that federal courts do not adjudicate cases involving the custody of minors"). In *Bukowski v. Spinner*, No. 17-CV-0845, 2017 WL 1592578, \*1 (E.D.N.Y. Apr. 28, 2017), the Eastern District of New York dismissed a case with similar allegations as those brought in this case.[4]

Plaintiffs allege that the "orders and processes" of the family court are unconstitutional; however, the crux of their argument arises out of the alleged improper custody determination by Defendant McGinty. *See* Dkt. No. 1 at 14-15, 21, 24, 26. Plaintiffs' alleged injuries stem directly from the disputed family court custody decision. *See id.* at 5-9, 14-16, 21, 24. Additionally, Plaintiffs request that this Court overturn the custody decision and permanently enjoin the enforcement of family court decisions. *See id.* at 26. Accordingly, to the extent that Plaintiffs request that this

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 54 of 61

Court overturn the custody determination, this Court lacks jurisdiction to adjudicate such a case.

### G. *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998) (citation omitted). "Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." *Id.*

 **\*6** In *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court held that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments." *Exxon Mobile*, 544 U.S. at 284. In light of *Exxon Mobile*, the Second Circuit has held that "there are four 'requirements' that must be met before the *Rooker-Feldman* doctrine applies." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (citation omitted). The requirements are as follows:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Id.* (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

Plaintiffs request that this Court overturn and enjoin the unfavorable decisions of the family court. *See* Dkt. No. 1 at 26. Plaintiffs claim that their injuries resulted from the custody determination made by Defendant McGinty prior to the commencement of this action. [5] *See id.* As such, to the extent that Plaintiffs seek to challenge the family court decision, this Court does not have jurisdiction to grant such relief under *Rooker-Feldman.*

### H. *Younger* Abstention [6]

*Younger* abstention "requires federal courts to abstain from exercising jurisdiction over claims that implicate ongoing state proceedings." *Torres v. Gaines*, 130 F. Supp. 3d 630, 635 (D. Conn. 2015) (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). This doctrine "applies if the federal action involves ongoing: (1) 'state criminal prosecutions'; (2) 'civil proceedings that are akin to criminal prosecutions'; or (3) civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.' " *Id.* at 636 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)). "If the federal action falls into one of these three categories, a [c]ourt may then consider the additional factors described in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)." [7] *Id.* Since the Supreme Court's decision in *Sprint*, several courts in this Circuit have held that *Younger* abstention applies in similar circumstances as this case. *See id.*; *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459, 2015 WL 1120120, \*2-3 (E.D.N.Y. Mar. 12, 2015) (holding that the plaintiff's claims for injunctive relief were barred by *Younger* where the plaintiff sought to challenge ongoing family court proceedings regarding the loss of custody of her son).

Accordingly, as Magistrate Judge Baxter concluded, to the extent that any issues in this litigation are still pending in family court, this Court is barred from exercising such jurisdiction pursuant to *Younger.*

### I. Opportunity to Amend

 **\*7** When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

Defendants McGinty and Ingram are entitled to immunity, and, thus, better pleading would not be able to cure the defects in Plaintiffs' allegations against them. Defendants Gilday, Ingram, Beesmer, and Augustine were not state actors, and the conspiracy allegations against them are entirely conclusory. Therefore, better pleading would not cure the substantive defects in the complaint. Accordingly, to the extent that

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

Case 5:24-cv-00850-DNH-ML   Document 9   Filed 10/29/24   Page 55 of 61

Plaintiffs allege constitutional and state law violations that this Court has subject matter jurisdiction over, those claims are dismissed without leave to amend with respect to all named Defendants in this action.

However, Magistrate Judge Baxter recommended that, to the extent Plaintiff Amato challenges the constitutionality of the New York Domestic Relations Law §§ 236 and 240, she may be able to do so in certain circumstances. *See* Dkt. No. 11 at 25-26. The Court agrees, and Plaintiff's complaint is dismissed without prejudice with respect to a claim challenging the constitutionality of the New York Domestic Relations Law, with only Plaintiff Amato as the named plaintiff, and the complaint must be filed against the proper defendant, at the proper time, and in the appropriate forum, as set forth more fully in the Order and Report-Recommendation. *See id.* at 25-26.

### IV. CONCLUSION

After carefully reviewing the record in this matter, Plaintiffs' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Baxter's Order and Report-Recommendation (Dkt. No. 11) is **ADOPTED** consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiffs' complaint (Dkt. No. 1) is **DISMISSED** as against Defendants McGinty, Ingram, Gilday, Beesmer, and Augustine; and the Court further

**ORDERS** that Plaintiff Amato's complaint (Dkt. No. 1) is **DISMISSED without prejudice** with respect to any claim challenging the constitutionality of the New York Domestic Relations Law, and only against the proper defendant for such challenge, at the proper time for such challenge, and in the proper forum, as discussed above; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4083575

---

## Footnotes

1    While all Plaintiffs have submitted claims against Defendants, the narrative in the complaint and objections is written in a singular voice referring to Plaintiff Amato as "I," "me," and "myself." *See generally* Dkt. Nos. 1, 17.

2    The objections make several comments claiming that "this court" "held" or "ruled" and cited case law from the Third Department. *See, e.g.,* Dkt. No. 17 at 23.

3    Similarly, Plaintiffs' purported state law claims are entirely conclusory and do not come close to alleging facts to support a valid cause of action. *See* Dkt. No. 1 at 24-26.

4    The court determined that despite the plaintiff "raising constitutional issues, the allegations stem from a state domestic relations matter and are thus outside this Court's jurisdiction." *Bukowski*, 2017 WL 1592578, at *3.

5    Plaintiffs filed this action on May 26, 2017 and Defendant McGinty rendered his custody determination on October 24, 2016. *See* Dkt. No. 17 at 4-5, 67.

6    *See Younger v. Harris*, 401 U.S. 37 (1971).

7    The factors examine "whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." *Torres*, 130 F. Supp. 3d at 636

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 57 of 61

Mahmood v. United States Government, Not Reported in Fed. Supp. (2020)

2020 WL 3965125
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mohammed Sayeed MAHMOOD, Plaintiff,

v.

UNITED STATES GOVERNMENT, Defendant.

Civ. No. 1:20-CV-207 (MAD/DJS)
|
Signed 03/17/2020

**Attorneys and Law Firms**

MOHAMMED SAYEED MAHMOOD, Plaintiff Pro Se,
9-4-86/89, Flat #201, Khan Tower, Salarjung Colony,
Hyderabad, Telangana 500 008, India.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has sent for review a civil Complaint filed
by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the
filing fee, but instead submitted a Motion to Proceed *in forma
pauperis* ("IFP"). Dkt. No. 2, IFP App. By separate Order,
this Court granted Plaintiff's Application to Proceed IFP. Also
pending are Motions for the Appointment of Counsel an to
Obtain and ECF Login. Dkt. Nos. 3 & 5. Now, in accordance
with 28 U.S.C. § 1915(e), the Court will *sua sponte* review
the sufficiency of the Complaint.

**I. DISCUSSION**

**A. Pleading Requirements**

Section 1915(e) of Title 28 of the United States Code directs
that, when a plaintiff seeks to proceed *in forma pauperis*,
"the court shall dismiss the case at any time if the court
determines that ... the action or appeal (i) is frivolous or
malicious; (ii) fails to state a claim on which relief may be
granted; or (iii) seeks monetary relief against a defendant
who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).
Thus, it is a court's responsibility to determine that a plaintiff
may properly maintain his complaint before permitting him
to proceed further with his action.

In reviewing a *pro se* complaint, this Court has a duty to
show liberality toward *pro se* litigants, *see Nance v. Kelly*,
912 F.2d 605, 606 (2d Cir. 1990), and should exercise
"extreme caution ... in ordering *sua sponte* dismissal of a
pro se complaint *before* the adverse party has been served
and both parties (but particularly the plaintiff) have had an
opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37,
41 (2d Cir. 1983) (emphasis in original) (citations omitted).
Therefore, a court should not dismiss a complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face." *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007). "A claim has facial plausibility
when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant
is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550
U.S. at 556). Although the court should construe the factual
allegations in the light most favorable to the plaintiff, "the
tenet that a court must accept as true all of the allegations
contained in a complaint is inapplicable to legal conclusions."
*Id.* "Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice." *Id.*
(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here
the well-pleaded facts do not permit the court to infer more
than the mere possibility of misconduct, the complaint has
alleged – but it has not 'show[n]'–'that the pleader is entitled
to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).
A pleading that only "tenders naked assertions devoid of
further factual enhancement" will not suffice. *Id.* at 678-79
(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, for the
proposition that Federal Rule of Civil Procedure 8 "demands
more than an unadorned, the-defendant-unlawfully-harmed-
me accusation"). Allegations that "are so vague as to fail
to give the defendants adequate notice of the claims against
them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed.
Appx. 102, 104 (2d Cir. 2009).

**B. Allegations Contained in Plaintiff's Complaint**

**\*2** Plaintiff characterizes this action as one against the
United States Government for personal injury, assault and
battery, defamation, general damages, intentional infliction
of mental distress and physical torture, and wage loss.
Compl. at pp. 6-7. In summary, Plaintiff alleges a pattern of
"unethical, unlawful, and inhumane Electronic Surveillance,
Mind-Control, and Cyber-Stalking activities" by unnamed
officials of the United States Government. *Id.* at p. 7. He

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 58 of 61

Mahmood v. United States Government, Not Reported in Fed. Supp. (2020)

makes slightly more specific allegations including alleged physical stalking and monitoring, as well as, phone and cyber stalking of Plaintiff, *id.* at p. 3, allegations that Defendant forced Plaintiff "to travel to United States through cyber stalking and mind control techniques," *id.* at p. 4, and forced Plaintiff to incur debt, make fraudulent money transfers, and make fraudulent benefits applications. *Id.* at p. 5.

### C. Review under Section 1915(e)

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Where, however, the grounds for dismissal offer no basis for curing the defects in the pleading, leave to amend would be futile. *Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015). When the basis for dismissal is a defendant's entitlement to immunity, for example, the pleading defects are "substantive rather than formal and [ ] leave to amend would be futile." *Jackson v. Pfau*, 523 Fed. Appx. 736, 737 (2d Cir. 2013).

Plaintiff's claims against the United States Government are subject to dismissal on the grounds of sovereign immunity. "Well-established principles of sovereign immunity bar suit against the United States unless it consents to be sued, the existence of such consent being a prerequisite for jurisdiction." *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. 20, 21 (2d Cir. 2007) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). "In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity. The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction." *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999). "Consent to suit 'must be unequivocally expressed in statutory text, and cannot simply be implied.' " *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. at 21 (quoting *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004)).

Plaintiff makes no contention here that any waiver of this immunity applies to the allegations set forth in the Complaint. While the Federal Tort Claims Act ("FTCA") provides a limited immunity from suit for tort claims, it has strict

exhaustion requirements. *Hill v. United States*, 2019 WL 5694016, at *5 (E.D.N.Y. Aug. 6, 2019). "The burden is on the plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987). The Complaint neither mentions the FTCA nor alleges compliance with it. "Accordingly, even if a *pro se* plaintiff's complaint can be liberally construed to state a claim under the FTCA ... the court does not have subject matter jurisdiction over the FTCA claim if [the] plaintiff has neither pleaded that he filed an administrative claim within two years of the incident giving rise to the action, nor that he exhausted an administrative tort claim prior to initiating the instant action." *Moore v. Samuel S. Stratton Veterans Admin. Hosp.*, 2019 WL 251725, at *3 (N.D.N.Y. Jan. 17, 2019) (internal quotations omitted). As such, his claims against the United States should be dismissed with prejudice.

### D. Other Pending Motions

**\*3** In light of the recommended disposition of this case, Plaintiff's other pending Motions are denied.

"In deciding whether to appoint counsel, a court should first determine whether the indigent's position seems likely to be of substance." *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995). Here, given the Defendant's immunity from suit, Plaintiff cannot make this threshold showing of merit and the Motion for Appointment of Counsel is denied.

"Because this court is recommending dismissal at this time, the court will deny [P]laintiff's motion to obtain ECF privileges without prejudice." *Amato v. McGinty*, 2017 WL 9487185, at *11 (N.D.N.Y. June 6, 2017), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017).

### II. CONCLUSION

**ACCORDINGLY**, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED** with prejudice; and it is

**ORDERED**, that Plaintiff's Motion for Appointment of Counsel is **DENIED**; and it is further

**ORDERED**, that Plaintiff's Motion to Obtain an ECF Login and Password is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by certified mail, return receipt requested, upon Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [1] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk

of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2020 WL 3965125

---

## Footnotes

1     If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 60 of 61

Mahmood v. United States, Not Reported in Fed. Supp. (2020)

2020 WL 1808206
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mohammed Sayeed MAHMOOD, Plaintiff,
v.
UNITED STATES of America, Defendant.

1:20-CV-207 (MAD/DJS)
|
Signed 04/09/2020

**Attorneys and Law Firms**

MOHAMMED SAYEED MAHMOOD, 9-4-86/89, Flat #201, Khan Tower, Salarjung Colony, Hyderabad, Telangana 500 008, India, Plaintiff pro se.

**ORDER**

Mae A. D'Agostino, U.S. District Judge:

 *1  Plaintiff commenced this action on February 25, 2020, against the United States of America asserting the following claims: (1) personal injury; (2) assault and battery; (3) defamation; (4) general damages; (5) intentional infliction of mental distress and physical torture; and (6) wage loss. *See* Dkt. No. 1. In a Report-Recommendation and Order dated March 17, 2020, Magistrate Judge Stewart reviewed the sufficiency of the complaint and recommended that the Court dismiss this action with prejudice. *See* Dkt. No. 7. Specifically, Magistrate Judge Stewart found that Plaintiff's claims, which are brought against the United States of America, are subject to dismissal on the grounds of sovereign immunity. *See id.* at 4-6. Neither party has objected to Magistrate Judge Stewart's Report-Recommendation and Order.

Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed IFP, "(2) ... the court shall dismiss the case at any time if the court determines that - ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404

U.S. 519, 520 (1972)). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party declines to file objections or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1).

In the present matter, the Court finds that Magistrate Judge Stewart correctly determined that Plaintiff's complaint should be dismissed with prejudice. "Well-established principles of sovereign immunity bar suit against the United States unless it consents to be sued, the existence of such consent being a prerequisite for jurisdiction." *Pietrangelo v. U.S. Dist. Court Vermont*, 223 Fed. Appx. 20, 21 (2d Cir. 2007) (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). "The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction." *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999).

 *2  As Magistrate Judge Stewart correctly determined, Plaintiff makes no contention that any waiver of immunity applies to the allegations set forth in his complaint. Moreover, although the Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity from suit for tort claims against the United States, it has strict exhaustion requirements and the burden is on the plaintiff to both plead and prove compliance with the FTCA's statutory exhaustion requirements. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987). Plaintiff's complaint neither mentions the FTCA nor alleges compliance with its exhaustion requirements. *See Pope v. Geo Grp.*, No. 18-CV-6900, 2019 WL 79426, *3 (E.D.N.Y. Jan. 2, 2019)

**Mahmood v. United States, Not Reported in Fed. Supp. (2020)**

Case 5:24-cv-00850-DNH-ML    Document 9    Filed 10/29/24    Page 61 of 61

("Accordingly, even if a *pro se* 'plaintiff's complaint can be liberally construed to state a claim under the FTCA ... the court does not have subject matter jurisdiction over' the FTCA claim if [the] 'plaintiff has neither pleaded that he filed an administrative claim within two years of the incident giving rise to the action, nor that he exhausted an administrative tort claim prior to initiating the instant action' ") (quoting *Diaz v. MDC Detention* Ctr., No. 17-CV-3768, 2018 WL 472810, *2 (E.D.N.Y. Jan. 17, 2018)). As such, the Court dismisses Plaintiff's complaint. [1]

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Stewart's Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED without prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1808206

---

### Footnotes

1    Since Plaintiff's complaint can be liberally construed as attempting to bring a claim under the FTCA and because it is unclear from the complaint whether Plaintiff may still timely exhaust his administrative remedies, the dismissal will be without prejudice. *See Green v. Fed. Bureau of Prisons*, No. 11 Civ. 2554, 2012 WL 1694632, *3 (S.D.N.Y. May 15, 2012) (holding that if a court dismisses a complaint "for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuant administrative remedies has not expired") (citing *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004)).

---